# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASTERSON MARKETING, INC., a California Corporation,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>LOTUS INTERNATIONAL, INC., a Texas Corporation, and DOES 1 through 1000, inclusive,<br><br>　　　　　　　　　Defendants. | CASE NO. 04cv2133-LAB (BLM)<br><br>**ORDER RE: MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT, MOTION FOR SUMMARY JUDGMENT, AND MOTION FOR LEAVE TO SEEK ADDITIONAL DISCOVERY**<br><br>[Dkt. Nos. 64, 75, 97] |

   Pending before the Court are three related motions: Plaintiff's motion for leave to file a third amended complaint ("Motion to Amend"), Defendant's motion for summary judgment ("MSJ"), and Plaintiff's motion for leave to seek additional discovery ("Discovery Motion"). The Discovery Motion asks, among other things, that in the interests of judicial economy, the MSJ be considered only after the Court rules on Plaintiff's Motion to Amend and on the Discovery Motion. The motions are all fully briefed, however, and the Court is prepared to rule on all three at this time.

   While the Court finds it expedient to consider the motions together, the parties were required to brief each one completely, *see* Civ. Loc. Rule 7.1(f)(1) (requiring each motion to be supported by a brief); thus, the Court need not cross-reference the pleadings or borrow arguments or evidence from the briefing on one set of motions in order to make its rulings on another. *See, e.g., Forsberg v. Pacific*

*N.W. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment.").

## I. Motion to Amend

In its motion to amend, Plaintiff seeks to add Teresa Tsao and Home, ETC, Inc. ("Home") as Defendants, to abandon its breach of contract claim; to add claims against Teresa Tsao under an alter ego theory; and to add a claim against Home for fraudulent transfer under the Texas Uniform Fraudulent Transfer Act ("UFTA"), Tex. Bus. & Comm. Code §§ 24.001 *et seq*.

Under Fed. R. Civ. P. 15(a), Plaintiff must obtain leave before amending its complaint, but the Court is directed to grant leave freely when justice so requires. As a matter of policy, Rule 15 is to be applied liberally in favor of amendment, but the Court need not grant leave where the amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citations omitted).

Plaintiff, citing *Adorno v. Crowely Towing & Transportation Co.*, 443 F.3d 122, 126 (1st Cir. 2006), argues the issue of futility is to be resolved solely on the basis of allegations using the same standard as for a motion under Fed. R. Civ. P. 12(b)(6). Even assuming Plaintiff has correctly and completely stated the law in the First Circuit, this Circuit has held "futility includes the inevitability of a claim's defeat on summary judgment." *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987) (citation omitted).

### A. Breach of Contract

Plaintiff's request to abandon its breach of contract claim is unopposed, and is **GRANTED**.

### B. Claims Against Home

As discussed below, the Court will grant Defendants' motion for summary judgment on Plaintiff's claims against Home. Plaintiff has failed to produce adequate evidence to support its argument that the Court should disregard Home's corporate form. However, because the Court has discretion to grant leave to amend following a grant of summary judgment, *Ferris v. Santa Clara County*, 891 F.2d 715, 718–19 (9th Cir. 1989) (citation omitted), the Court will consider whether Plaintiff should be permitted to amend its complaint to add allegations in support of this argument.

The evidence Plaintiff cites is essentially the same as that discussed in the Court's analysis of the MSJ. Because the evidence will not support a finding that the corporate form should be disregarded, the Court finds permitting Plaintiff to amend its FAC to add these allegations would be futile.

### C. Adding Teresa Tsao as a Defendant

Plaintiff's theory is that Lotus International's ("Lotus") and Home's corporate form should be disregarded and Teresa Tsao should be held liable for their wrongdoing. As discussed below, claims against Home are being dismissed.

Plaintiff points to evidence, in the form of corporate filings, showing Teresa Tsao was the sole owner of Lotus. (Mot. to Amend at 9:22–27.) Although this evidence is controverted, a jury could reasonably find Ms. Tsao was Lotus' owner. Plaintiff also alleges on July 7, 2006, Lotus' corporate status was forfeited because it had inadequate assets to satisfy obligations. (*Id.* at 10:9–11.) This was two years after Lotus ceased doing business. Plaintiff alleges "Home does not have financial records that establish w[h]ere it obtained its assets for capitalization." (*Id.* at 10:17–19.) Plaintiff also alleges Lotus tranferred assets to Home, of which Ms. Tsao was also a shareholder. (*Id.* at 10:5–10.)

Plaintiff's theory is that Ms. Tsao formed Home in order to avoid paying creditors (Mot. to Amend. at 11:4–6), and that both Lotus and Home were her alter ego. (*Id.* at 11:10–27.) Plaintiff cites Texas law in support of this theory arguing Lotus was dominated by a sole stockholder and inadequately capitalized, and the dominant shareholder preferenced herself as a creditor in violation of her duty to an insolvent corporation. (*Id.* at 11:10–17 (citing *Tigrett v. Pointer*, 580 S.W.2d 375, 381–87 (1979)).)

As outlined in the discussion of the Texas Uniform Fraudulent Transfer Act claim below, the assets alleged to have been transferred were minimal, consisting of used computer servers, a telephone number, customer lists, and Lotus' 2005 catalogs. As discussed in that section, Plaintiff's allegations do not even make clear that all of these were assets owned by Lotus. Furthermore, even assuming these were all assets with some value to Lotus, there is no suggestion a transfer from Lotus to Home effected any fraud. There is no allegation any of these assets were being hidden or that they could have been used to satisfy creditors.

1  As discussed below, the Court applies federal common law, although it looks to state law for
2  guidance as well.  Under federal or state common law standards, disregarding the corporate form is
3  an extraordinary remedy that will not be resorted to unless it is necessary to do so to prevent an
4  injustice or avoid sanctioning a fraud.  *See, e.g., Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir.
5  1980) (setting forth standard under federal common law); *Tigrett*, 580 S.W.2d at 381–82 (setting forth
6  standard under Texas law); *Flynt Distributing Company, Inc. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir.
7  1984) (setting forth standard under California law).  Even accepting the allegations as true, Plaintiff
8  cannot show the Court would be sanctioning fraud or injustice by recognizing Lotus' corporate form.

9  For these reasons, leave to add Teresa Tsao as a Defendant and to add claims against her is
10  **DENIED.**

11  **D.  UFTA Claims**

12  Plaintiff wishes to add UFTA claims based on its allegations that Home took ownership in
13  certain of Lotus' assets, specifically, computer servers, a telephone number, customer lists, and Lotus'
14  2005 catalogs. (Motion to Amend, at 8:22–25.)  Plaintiff's theory is that, because Home was using
15  these things and because Defendants have no written records it paid any money for these assets, Home
16  must be a fraudulent transferee.

17  This Court previously addressed this question.  In its order of June 23, 2006, the Court denied
18  Plaintiff's requests to add a new fraudulent transfer claim, finding no evidence to support an allegation
19  of fraudulent intent. (Order of June 23, 2006 at 6:3–4.)  Defendants correctly point out this portion
20  of the Motion to Amend is actually a request for reconsideration of that order, but as a motion for
21  reconsideration it is late and not in compliance with Civil Local Rule 7(1)(I) and the Court's standing
22  order, ¶ 4(j). (Mem. in Opp'n to Motion to Amend, at 14:9–15:2.)  As such, the motion will be denied
23  on that ground.

24  Even if the Court considered this portion of the Motion to Amend, however, it would be denied
25  as futile.  Plaintiff's argument is that because Defendants have no written records showing assets were
26  transferred from Lotus to Home, assets were therefore transferred fraudulently, without payment of
27  reasonable value. (Motion to Amend at 8:21–26.)  As discussed below in the Court's analysis of the
28  MSJ, Defendants contend Lotus transferred its assets to Rimol HK Co. in satisfaction of its debts.

1  Defendants further contend Home leased Lotus' former quarters and was permitted to use Lotus'
2  former telephone number and, as an interim measure, the same computer servers. Plaintiff neither
3  alleges nor presents evidence Lotus owned the computer servers it used or that its telephone number
4  was an "asset" as defined by the UFTA. Tex. Bus. & Comm. Code, § 24.002 (defining "asset" as
5  property of a debtor). Nor has Plaintiff made any credible argument or presented any evidence for the
6  proposition that the transfer of assets such as a defunct company's product catalogs would be
7  evidenced by a written record. Among the alleged assets, the only one providing any support for this
8  claim is the customer list. However, Defendants contend Lotus maintained no secret customer list,
9  and support this argument with evidence customers were known to Lotus' independent sales
10 representatives, many of whom later worked for Home. (Mem. in Opp'n to Mot. to Amend, at
11 8:14–16 (citing Decl. of Alex Tsao, filed May 25, 2007, ¶ 31).)

12 Plaintiff relies on the provision in Tex. Bus. & Comm. Code § 24.005(a)(2) that a creditor may
13 have remedies under the UFTA if a transfer is made "without receiving a reasonably equivalent value
14 in exchange for the transfer or obligation . . . ."

15 As noted in the Court's order of June 23, 2006, Plaintiff was not able to cite any evidence then
16 to show fraudulent transfer, and the new allegations and evidence provide no additional support. The
17 Court therefore holds amendment to add this claim would be futile.

18 **II.   MSJ**

19 Plaintiff's claims arise out of business dealings between the parties. Plaintiff is a California
20 corporation and maintains its principal place of business in this district. Plaintiff's business includes
21 commercial photography and the licensing of photographic images for use in marketing. Lotus is a
22 Texas corporation whose business included importing and selling decorative ceramics. Plaintiff's
23 claims stem from Defendants' alleged misappropriation of photographic images of Lotus's ceramics
24 for use in advertising.

25 **A.   Legal Standards**

26 Federal Rule of Civil Procedure 56(c) empowers the Court to enter summary judgment on
27 factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive
28 determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary

judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

The movant is not required to produce evidence showing the absence of a genuine issue of material fact, nor is he required to offer evidence negating the non-movant's claims. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

The "mere existence of a scintilla of evidence" in support of the non-moving party's position is not sufficient to withstand summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Accordingly, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegation or denials of his pleadings." (*Id*. at 256.) The non-movant must go beyond the pleadings to designate specific facts showing that there are genuine factual issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." (*Id*. at 250.) "When the non-moving party bears the burden of proof at trial, summary judgment is warranted if the non-movant fails to make a showing sufficient to establish the existence of an element essential to its case." *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694 (1993) (citations, internal quotations, and alterations omitted).

In considering the motion, the non-movant's evidence is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. Determinations regarding credibility, the weighing of evidence, and the drawing of legitimate inferences are jury functions, and are not appropriate for resolution by the court on a motion for summary judgment. *Id*.

In reviewing the evidence, this Court restricts its inquiry to facts supported by the record. The Court does "not give credence to empty rhetoric . . . but credit[s] only those assertions that are supported by materials of evidentiary quality." *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 2 (1st Cir. 1999). In addition, the Court need not draw an unreasonable inference or accept conclusory allegations; "conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337,

345 (9th Cir. 1995). "In general, inadmissible hearsay evidence may not be considered on a motion for summary judgment." (*Id*. at 345 n.4.)

### B.     Defendants' Arguments

Defendants contend they are not liable for any use of Plaintiff's photographs in catalogs because the photographs are uncopyrightable derivative works. They also seek dismissal of Defendants Alex Tsao and Home because, they argue, these two Defendants did not participate in any infringing conduct and because they are not Defendant Lotus' alter egos. Defendants also seek dismissal of Plaintiff's breach of contract claim on the grounds the agreement was between Plaintiff and ZB Creations only, and they were not party to it. Plaintiff does not contest this, and as part of its Motion to Amend, states it wishes to withdraw this claim. Defendants also seek dismissal of the claim for permanent injunction, which they contend is merely a remedy, not a claim.

Defendants have filed objections to Plaintiff's exhibits submitted in opposition to the MSJ. Of the evidence objected to, the Court only relies on Exhibits 11 and 12 submitted in support of Plaintiff's opposition to the MSJ. Defendants object these two exhibits, which consist of "screengrabs" showing pages from the respective websites of Lotus and Lotus' representatives. Defendants object these exhibits are not properly authenticated under Fed. R. Evid. 901 and Plaintiff's counsel himself previously objected to these as hearsay. (Defendant's Objections at 2:16–22.) Plaintiff attached declarations attesting to the authenticity of these "screengrabs." (Mem. in Opp'n to MSJ, Ex. 11 at 2; Ex. 12 at 2.) If there is some more specific defect, Defendants have failed to point it out. In addition, because these "screengrabs" were taken from the respective websites of Lotus and Lotus' representatives, and are offered by Plaintiff, it does not appear why they would be hearsay. Fed. R. Evid. 801(d)(2). This objection is therefore **OVERRULED**. The Court has not relied on any other evidence objected to.

### C.     Copyrightability of Catalog and Photographs

The parties agree Lotus was working with a San Diego company, ZB Creations, to create Lotus' 2004 catalog. (Jt. Statement of Undisputed Facts ("Jt. Stmt."), ¶ 14; Mem. in Supp. of MSJ at 4:15–16.) Plaintiff presents evidence Lotus hired Sandy (or Sande) Zatt to market its products. (Ex. / / /

35 in Opp'n to MSJ (Excerpts of Tr. of Alex Tsao Depo., Aug. 8, 2006) at 61:2–16.)[1] Plaintiff presents evidence showing Zatt signed a contract for Plaintiff to take photographs and prepare and print catalogs for Lotus. (Ex. 3 in Opp'n to MSJ.) The parties agree Ed Masterson, on behalf of Plaintiff, was responsible for selecting the angle, arrangement of the products, lighting, and background for each photograph. (Jt. Stmt., ¶ 15.) Plaintiff prepared the catalog using its photographs, for which it submitted an invoice to ZB Creations. (Mem. in Supp. of MSJ at 4:18–20.) Defendants assert Lotus was dissatisfied with the catalog, but agrees Plaintiff delivered it after the beginning of 2004. (*Id.* at 4:20–21.) The parties agree Plaintiff registered a copyright in the 2004 catalog. (Mem. in Supp. of MSJ at 7:4–5; Mem. in Opp'n to MSJ at 3:20–23.) Defendants have focused on the photographs and have not contended other design elements of the 2004 catalog are derivative works. Plaintiff's claims are thus infringement claims as to both the 2004 catalog design, and as to photographs in the 2004 catalog.

The parties have not disputed that the decorative ceramics and other products depicted in the photographs were themselves copyrighted.

### 1.   2004 Catalog

Defendants agree Plaintiff's copyright registration constitutes prima facie evidence of the validity of its copyright. (Mem. in Supp. of MSJ at 7:4–5 (citing *Entertainment Research Group, Inc. v. Genesis Creative Group*, 122 F.3d 1211, 1217 (9th Cir. 1997) ("*ERG*").) This means they bear the burden of proving the copyright is invalid. *Id.* However, they contend because Plaintiff's work constitutes a derivative work rather than being original is similar to the underlying work, it cannot be subject to copyright protection. (Mem. in Supp. of MSJ at 7:6–8:11; 9:23–10:9.) Defendants assert their ceramics are original, copyright able works. (*Id.* at 8:15–16.) Defendants argue, citing *ERG* and *Ets-Hokin v. Skyy Spirits, Inc.*, 1998 WL 690856 , slip op. at *5 (N.D.Cal. Sept. 28, 1998), that recognizing a copyright in Plaintiff's photographs would undercut their own rights as holders of the copyright in the original objects.

/ / /

---

[1] The exhibits submitted in support of Plaintiff's opposition to the MSJ are not consecutively page-numbered. Therefore, The Court will adopt the citation method used by Plaintiff which, in this case, refers to the page number of the deposition transcript.

Under Ninth Circuit Rule 36-3(c), an unpublished opinion such as *Ets-Hokin*, 1998 WL 690856, is not citable. Further, as Defendants note in the procedural history, this order was reversed. The Court finds it appropriate, however, to rely on *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000) ("*Ets-Hokin* I") and *Ets-Hokin v. Skyy Spirits, Inc.,* 323 F.3d 763, 766 (9th Cir. 2003) ("*Ets-Hokin* II").

The amount of creativity necessary to render a work copyrightable is "extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Ets-Hokin* I, 225 F.3d at 1076 (quoting *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 345 (1991)) (internal quotation marks omitted). The parties do not dispute Plaintiff selected the angle, arrangement of the products, lighting, and background for each photograph. The presence of these factors in a photograph generally supports a finding of originality sufficient to support a copyright. 225 F.3d at 1076–77 (citations omitted).

The facts of this case are significantly different from those in the cases Defendants rely on. In *ERG*, the question was whether one group of derivative works infringed the copyright on an earlier group of derivative works. Both parties had created derivative works to sell to the owners of the underlying copyrights. In *Ets-Hokin*, one photograph of an uncopyrightable vodka bottle was held not to infringe on the copyright of an earlier photograph of the same bottle. While the district court held the bottle was protected by copyright (and thus the photographs were derivative works), the Ninth Circuit held in *Ets-Hokin* I the bottle was not copyrightable; thus, the photographs were original works. In *Ets-Hokin* II, the court applied the doctrines of merger and scènes à faire to conclude that, although the photographs were similar, the similarity was limited to the common idea of photographing the vodka bottle and no original elements were copied. 323 F.3d at 766.

Here, the parties do not dispute Plaintiff created the photographs with the authorization of an agent acting for Lotus, who appears to be the copyright holder or, in some cases, to have authority from the copyright holders.[2] The question before the Court is whether Lotus may freely use these photographs without paying Plaintiff. Bearing in mind the obvious fact that catalog photographs are supposed to represent the product in an accurate but flattering way, it is not surprising that the

---

[2] It is unclear whether this is true of all the ceramics, but it is true of at least a large number. *See* Decl. of Alex Tsao in Supp. of MSJ, ¶¶ 3–5.

1 photographs Lotus' agent asked Plaintiff to make were faithful representations of the ceramics. Of
2 course, the parties disagree on the degree of originality. In other words, can a business engage a
3 photographer to take photographs of its products, and then freely use those photographs while at the
4 same time refusing to pay the photographer because the photographs faithfully represent the products?
5 The answer is obviously no, and copyright law is not to the contrary.

6 Plaintiff has argued the photographs are not derivative works at all, because it had the consent
7 of the copyright holder. Plaintiff cites *United States v. Taxe*, 540 F.2d 961, 965 n.2 (9th Cir. 1976)
8 for the principle that "[a] work will be considered a derivative work only if it would be considered an
9 infringing work if the material which it has derived from a prior work had been taken without the
10 consent of a copyright proprietor of such prior work." (citation omitted). Plaintiff argues the fact that
11 the copyright holder consented means the photographs cannot be derivative works. This, however,
12 misconstrues *Taxe* and other cited precedents. As the remainder of the Ninth Circuit's explanation
13 makes clear, consent merely prevents a work from being an <u>infringing</u> work, not a derivative work.
14 540 F.2d at 965 n.2 ("It is saved from being an infringing work only because the borrowed or copied
15 material was taken with the consent of the copyright owner of the prior work . . . .") (citation omitted).

16 The Court finds no basis for Lotus' concern that recognizing a copyright in the photographs
17 Plaintiff took would prevent Lotus from making or using other photographs of the same products. As
18 the Ninth Circuit pointed out in *Ets-Hokin*, when similarity is inevitable (as is the case when two
19 photographs depict the same bottle), the copyright holder is left with a "thin copyright, which protects
20 against only virtually identical copying." 323 F.3d at 766 (quoting *Apple Computer Corp. v. Microsoft
21 Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994)). An analogous case, *SHL Imaging, Inc. v. Artisan House,
22 Inc.*, 117 F.Supp.2d 301, addressed a similar issue. In that case, a manufacturer of picture frames hired
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

a photographer to photograph its frames to be used in catalogs. The court explained:

> While plaintiff's photographs meet the minimal originality requirements in *Feist*, they are not entitled to broad copyright protection. Plaintiff cannot prevent others from photographing the same frames, or using the same lighting techniques . . . . What makes plaintiff's photographs original is the totality of the precise lighting selection, angle of the camera, lens and filter selection. In sum, plaintiff is granted copyright protection only for its "incremental contribution." Practically, the plaintiff's works are only protected from verbatim copying. However, that is precisely what defendants did.

117 F.Supp.2d at 311 (citation omitted).

Here, Plaintiff is merely claiming ownership in its own photographs and catalog, and has contended that Lotus and other Defendants used exact or virtual duplicates of its photographs. Lotus, as owner of the underlying copyright, could therefore use all but "virtually identical" or verbatim photographs.

**2.     2005 and 2006 Catalogs**

With regard to other catalogs Plaintiff alleges infringed on its 2004 catalog design, Plaintiff cites specific illustrative evidence. (Mem. in Supp. of MSJ at 7:6–22 (comparing 2004 and 2006 catalogs).) Plaintiff has alleged a 2005 catalog used by Lotus and Home and a 2006 catalog used by Home infringed its photographic and catalog design copyrights.

The Court has reviewed the 2005 catalog's allegedly infringing photographs and catalog design elements and compared them with the cited photographs and elements of the 2004 catalog, and finds no evidence of infringement. Although Defendants object to this evidence, the Court will assume their authenticity and admissibility for the sake of its analysis.

Plaintiff contends certain elements of the catalog design are evidently an intentional imitation, but these elements (positioning the title at the top of the page, number of photographs per page, and use of an illustrative photograph in the title) are so commonplace as to be uncopyrightable. In addition, these design elements are not even present in all the cited pages of the 2004 catalog. Exhibit 4-1 at 20, for example, shows a page from the 2004 catalog on which only one photograph was used and title text appears both at the top and bottom of the page. Furthermore, these design elements are not uniform throughout the 2004 catalog. Rather, the 2004 catalog uses several different page layout designs. (*See id.* at 22 (page utilizing four photographs and, in place of illustrative title photograph,

1  large inset photograph of a decorative broom), 25 (omitting photograph in title), 28 (using three
2  photographs).) The ideas of putting a title at the top of a catalog page, of using between two and four
3  photographs per page, and of using an illustrative photograph in the top corner of the page, even taken
4  all together, are merely general design concepts and therefore uncopyrightable. *See Swirsky v. Carey*,
5  376 F.3d 841, 850 (9th Cir. 2004) (relying on scènes à faire doctrine to hold that commonplace
6  expressions, like ideas, cannot be given copyright protection).

7  Plaintiff also cites isolated examples of other page design ideas, such as using a thick black line
8  to divide photographs of decorative dustpans, or using a very similar arrangement of decorative
9  cleaning items. (Mem. in Opp'n to MSJ, at 6:4–8.) The layouts of these pages bear no more than a
10 passing resemblance to each other, however, and the photographs, while similar, are not identical or
11 virtually identical. (*Cf.* Ex. 4-1 at 22, Ex. 14-1 at 009.) The catalog design fares no better under the
12 same analysis, and the photograph is not "virtually identical." While Plaintiff may be able to show
13 a copyright in the 2004 catalog design, the 2005 catalog is only generally similar in places, and the
14 allegedly copied design elements are in fact merely commonplace design concepts, which are not
15 subject to copyright protection.

16 The allegedly infringing photographs depict identical animal-design cookie jars. Plaintiff
17 alleges the photographs copy the original photographs' angle, lighting, and dark-to-light background
18 fade. While certain of the cookie jars are shown in generally similar positions in both sets of
19 photographs and are shown against backgrounds that fade dark to light, the similarity ends there.

20 None of the jars are positioned identically, and two of the six jars cited as examples (the bear
21 jar and the duck jar) are in noticeably different positions. The background fade is more abrupt and the
22 shade of gray used in the background is darker in the 2004 catalog. In the 2004 catalog, the cookie jars
23 are sitting on a slightly reflective white surface whereas in the 2005 catalog the surface is undetectable.
24 The lighting and contrast are likewise noticeably starker in the 2004 catalog, with large visible
25 rectangular highlights on the cookie jars. While some highlights are visible in the 2005 catalog
26 photographs, they are smaller, different in shape and location, and less stark. Furthermore, the cookie
27 jars were photographed from a much lower angle for the 2004 catalog, and slightly different details
28 of the jars are visible.

If the photographs in the 2004 catalog were original works, rather than derivative works, Plaintiff might prevail on this point. But, as discussed above, Plaintiff's photographs are afforded only "thin" copyright protection, prohibiting only identical or virtually identical copying. *Ets-Hokin*, 323 F.3d at 766. The photographs cited as evidence of copying are obviously not identical.

Even assuming the admissibility of this evidence, the Court holds no jury could reasonably find, based on the evidence Plaintiff has cited, that photographs in the 2005 catalog were "virtually identical" to Plaintiff's photographs. The Court further holds that the identified page layout elements, without more, do not constitute a copyrightable work.

The Court's analysis of the catalog design and photograph infringement claims as to the 2006 catalog is the essentially the same as for the 2005 catalog, the main difference being that the photographic backgrounds are even more different. The Court's holding as to the 2006 catalog and photographs therein is therefore the same as for the 2005 catalog.

### D.     Defendant Alex Tsao

Alex Tsao argues he did not personally copy or authorize the copying of any of Masterson's photographs, and presents evidence to this effect in the form of his own affidavit and an affidavit by Richard Vanglish, the employee who did copy the photographs. (*See* Mem. in Supp. of MSJ at 14:9–11.) He also argues if Masterson's photographs appear on other websites, they were posted by others and not by him or at his direction. (*Id.* at 14:11–14.) Citing 3 *Nimmer on Copyright* § 12.04[A][1] at 12-74, he argues that, as a corporate officer, he can only be personally liable if he participated in infringing acts.

Plaintiff presents evidence Alex Tsao was responsible for communicating with the designers of Lotus' and Home's websites. (Mem. in Opp'n to MSJ at 4:20–22, 5:14–16 (citing deposition of Alex Tsao).) Plaintiff also points to evidence no one else at Lotus had the authority to direct the web designer to post the photographs on the Lotus website, and that the catalog, including the photographs, was posted on Lotus' website at his direction. (*Id.* at 4:21–27.) Plaintiff alleged Defendants posted its photographs on other websites in addition to those for Lotus (*see* Complaint at 6:25–7:3), but has only pointed to evidence Defendants caused the photographs on one other site, a website for Lotus' representatives. (Mem. in Opp'n to MSJ at 18:1–4 (citing Exs. 11–13).)

Although the evidence is in conflict, the Court concludes a reasonable jury could find Alex Tsao directed or authorized the posting of Plaintiff's photographs on the websites of Lotus and its representatives. There is, however, no evidence he directed authorized the posting of these photographs on other sites.

Alex Tsao also argues there is no evidence he had any ownership interest in Lotus. (Memo in Supp. of MSJ at 15:19–22.) He contends the only evidence Plaintiff has offered is that he worked for both Lotus and Home, and is the son of Teresa Tsao, Lotus' alleged owner. (*Id.*) Plaintiff has not contested these arguments, but rather seeks leave to amend its complaint to add allegations.

### E.  Defendant Home

The parties have not briefed the issue of whether Texas, California, or federal common law governs the alter ego issue, although both analyze the issue under Texas law. In their reply, Defendants asserted federal common law applied because Plaintiff sought to hold Home liable for a federal claim, although Defendants provided no relevant authority. Because the Court is not sitting in diversity, no *Erie* question arises, and the Court applies federal common law. *Board of Trustees of Mill Cabinet Pension Trust Fund for N. Calif. v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 772 (9th Cir. 1989) ("In considering whether to disregard the corporate form, we apply federal substantive law, although we may look to state law for guidance.") (further citation omitted). Disregarding the corporate form is an equitable remedy addressed to the discretion of the Court. *McClaran v. Plastic Industries, Inc.*, 97 F.3d 347, 358 (9th Cir. 1996).

"Corporate separateness is respected unless doing so would work injustice upon an innocent third party." *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986) (citations omitted). "The inability to collect from an insolvent defendant does not, by itself, constitute an inequitable result." *Valley Cabinet*, 877 F.2d at 774 (internal quotation marks and alterations omitted).

Defendants note Home did not personally participate in any infringing activity, and there is no evidence Home had anything to do with the Lotus website. They also argue the businesses are separate and did not hold assets in common or do business as one entity. (Mem. in Supp. of MSJ at 16:19–18:2.)

///

1    Plaintiff alleges Home used hard copies of a later version of Lotus' catalog, (Mem. in Opp'n to MSJ, at 5:24–28 ("Lotus 2005 catalog . . . . was also used by Home by placing a sticker on the back that covered over Lotus' contact information and replac[ed] it with Home's contact information . . . .")), and refers to the 2005 catalog as the "Lotus/Home 2005" catalog. (*Id.* at 18:7.) Plaintiff also alleges Home's 2006 catalog took design attributes from the 2004 catalog. (*Id.* at 18:7–8.) Plaintiff, however, provides no evidence to support these allegations. The cited evidence for Home's use of Lotus' 2005 catalog consists of a copy of Lotus' catalog (*id.* at 5:24–28 (citing Ex. 14)), and the cited evidence for Home's infringement in its own 2005 and 2006 catalogs consists of Plaintiff's own interrogatory responses. (*Id.* at 18:7–11 (citing Ex. 30).) Furthermore, as discussed above, Plaintiff presents no evidence the 2005 catalog infringed on Plaintiff's copyright in the 2004 catalog or any of Plaintiff's photographs.

    Plaintiff cites evidence showing Lotus and Home had three officers and several employees in common and used the same address and telephone number. (Memo in Opp'n to MSJ at 20:3–18.) Plaintiff likewise cites evidence showing Home serviced orders for Lotus and Home's director, Richard Vanglish, performed legal work for Vanglish. (*Id.* at 20:22–25.) The servicing of orders appears to have included receiving and filling orders from customers who originally attempted to visit Lotus' website. (*Id.* at 8:3–5 (citing evidence that inquiries to Lotus' parent's website were automatically redirected to the Home website).) Plaintiff argues Home and Lotus sell generally similar products. (*Id.* at 21:23–25.) Finally, Plaintiff has cited evidence Home incorporated the same month Lotus ceased operations, Home held itself out to be Lotus' successor, and customers believed the two were the same company. (*Id.* at 21:11–22:3.)

    In addition, Plaintiff cites Home's responses to requests for production of documents stating that Home was not in possession, custody, or control of any documenting Home's acquisition of Lotus' assets. (Memo in Opp'n to MSJ at 20:25–21:11.) Plaintiff points to evidence Home used some of the same computer servers Lotus had once used, serviced some of Lotus' customers, had access to Lotus' customer list, and adapted Lotus' 2005 catalog for its own use. (*Id.* at 21:2–11.) Plaintiff also points to other evidence of links between the two companies, including common employees, use of the same address and phone number, and Home's marketing to Lotus' customer base. (*Id.* at 20:3–18.)

Home was incorporated in December, 2004, just as Lotus was ceasing operations. (Memo in Opp'n to MSJ at 21:11–14.) Allegations based on the cited evidence, if proved, would show Home acquired some assets from Lotus, and did its best to capitalize on Lotus' goodwill and to position itself as Lotus' successor. These might be relevant to show Home was liable for Lotus' infringement, but only if Home acquired all or substantially all of Lotus' assets. *See North Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 651, 654 (7th Cir. 1998). Home's acquisition of assets such as Lotus' catalogs and customer lists, and Home's access to the same computer servers would not necessarily be evidenced by written documents, however, so Plaintiff's argument that Home failed to produce documents is unsupported. More importantly, the implication that Home must have withheld other yet-unknown evidence is speculative. Plaintiff has no evidence to show the assets Home acquired constituted all or substantially all of Lotus' assets, so as to make Home Lotus' successor.[3] As discussed below, Plaintiff will not be granted leave to reopen discovery; there is thus no possibility Plaintiff will be able to present any such evidence.

In general, unity of ownership is required before courts will disregard the corporate form. *See Las Palmas Assocs. v. Las Palmas Center Assocs.*, 235 Cal.App.3d 1220, 1248–49 (Cal.App. 2 Dist. 1991) (citing *Riddle v. Leuschner*, 51 Cal.2d 574, 580 (1959) for the principle that some common ownership is required before disregarding the corporate form); *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 730 (Tex. App.-Corpus Christi, 2006) (giving common ownership as a starting point in the alter ego analysis); *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997) ("Common ownership alone is insufficient to support disregard of the corporate form.")

Plaintiff presents evidence Ronnie Tsao and Teresa Tsao, Judith Tse, and Alex Tsao were Home's shareholders (Memo in Opp'n to MSJ at 3:4–7), and Defendants apparently admit this. (Decl. of Alex Tsao filed May 25, 2007, ¶ 29). Plaintiff points to evidence Teresa Tsao was listed on Lotus'

---

[3] In its briefing on the MSJ, Plaintiff identifies at least one other group of substantial assets, Lotus' copyrights in its artwork. (Mem. in Opp'n to MSJ, at 21:8–11.) This allegation is missing from the Motion to Amend. (*See* Motion to Amend at 7:8–19.) Plaintiff merely speculates these copyrights were transferred to Home, without citing any evidence in support of this contention. (Mem. in Opp'n to MSJ, at 21:8–11.) Rather, Plaintiff refers generally to all documents filed by Defendants in support of the MSJ. (*Id.*) By contrast, Defendants suggest Rimol HK Co., as Lotus' creditor, took ownership of Lotus' assets, and Home leased Lotus' former office and took possession of some computers and other property Lotus had transferred to the landlord. (Decl. of Richard Vanglish, filed May 25, 2007, ¶¶ 15–16.) Plaintiff does not controvert this.

corporate filings as sole owner of Lotus. (Memo in Opp'n to MSJ at 2:6–8.) Plaintiff also points to evidence one of Lotus' representatives believed, based on her dealings with Lotus, that Ronnie Tsao was its owner. (*Id.* at 2:10–12.) Defendants submit evidence attempting to show the corporate filings were a clerical error and the actual owner of Lotus was Rimol HK Co., a Hong Kong limited liability company owned by individual investors who were not related to Alex Tsao or his family. (Decl. of Alex Tsao filed May 25, 2007, ¶ 6.) At this stage, however, the Court does not weigh the evidence or resolve evidentiary conflicts. *Anderson*, 477 U.S. at 255. The Court therefore accepts the entities had some common ownership.

In contrast, Plaintiff has pointed to no evidence that respecting Lotus' corporate form would lead to an inequitable result or would sanction fraud, or that Home was actually a facade for Lotus. *See Kirno Hill*, 618 F.2d at 985 (identifying two bases under federal common law for disregarding the corporate form: fraud, or use of the corporation as a facade for carrying out one's own business instead of the corporation's). For instance, no evidence is cited to show Home was formed to defraud Plaintiff or anyone else. Nor is there any evidence Home benefitted from the allegedly infringing 2004 catalog. In particular, there is no evidence Home even existed until after the events giving rise to claims against Lotus had occurred. (*See* Mem. in Opp'n to MSJ at 4:10–5:13.)

Plaintiff describes its theory of injustice as being based on Home's portrayal of itself as being the same entity as Lotus. "If it is going to hold itself out in such a manner for economic gain, it would be inequitable not to hold them to allow it to gain the benefits from such conduct, without holding it to the liabilities." (Mem. in Opp'n to MSJ at 21:27–28:4.) The parties have also described this alleged conduct as a "shell game" to avoid liability. (Motion to Amend at 7:22–8:4.) While "holding out" can sometimes be a factor in a court's decision to disregard the corporate form, *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1110 n.4 (9th Cir. 1979), it is not itself an injustice to Plaintiff. For instance, when Plaintiff created the photographs and the 2004 catalog, it could not have been deceived into thinking it was actually dealing with Home, which did not yet exist, or that Home's assets would be available to satisfy Lotus' obligations. Nor has Plaintiff presented any evidence showing anyone used or attempted to use Home's corporate form to hide Lotus' assets from creditors, or to commit any other form of fraud on Plaintiff.

Accepting Plaintiff's allegations and evidence, Plaintiff can show members of Alex Tsao's family owned Lotus, which failed, and they then started Home as a new enterprise in the same line of business. Plaintiff cannot show Home was founded or used to defraud Plaintiff, or that recognizing Home as a new and separate corporation would work an injustice on Plaintiff.

Plaintiff's Discovery Motion mentions[4] additional evidence suggesting the website for Lotus' distributors was still using the photographs and the entire 2004 catalog as late as February, 2007. (Discovery Motion at 4:20–24.) Even if admissible evidence exists, it was available to Plaintiff, who failed to cite it in its opposition, or in its Motion to Amend. Therefore, the Court does not rely on it or any other mere allegations. The Court concludes Plaintiff has not shown it has sufficient evidence to withstand summary judgment as to its claims against Home.

## III. Discovery Motion

In its voluminous Discovery Motion, Plaintiff seeks leave to file a late motion for sanctions under Fed. R. Civ. P. 37. In its motion, Plaintiff intends to ask the Court to stay consideration of the MSJ pending further discovery, and to impose sanctions. Plaintiff states its counsel had just learned, shortly before filing the application, of "egregious discovery violations." (Discovery Motion at 2:2.) The motion narrates communications between counsel for Plaintiff and Defendants and makes clear the parties have been involved in contentious discussions regarding production.

Plaintiff complains of being provided with documents late, after briefing on the MSJ was completed. (Discovery Motion at 6:15–7:25.) Plaintiff also complains the MSJ relies on 210 pages of documents never produced to Plaintiff, (*id*. at 7:23–26), which included copyright registrations, the 2002–2004 catalogs, the Lotus catalog supplement and sell sheets; factory, artists, and Lotus photography; exhibits comparing the 2004 catalog with earlier Lotus photographs, and portions of two deposition transcripts. (*Id.* at 7:13–26.)

Plaintiff says certain specific documents or types of documents it believes should have been produced, or at least produced earlier. These include audited financial statements and trial balance sheets for Lotus, which Lotus said it did not have (Discovery Motion at 5:1–10), but which Plaintiff says it now knows Lotus did have. (*Id.* at 6:8–10.) Plaintiff also mentions an Exhibit 5, a Home payee

---

[4] The Discovery Motion mentions this evidence but cites to Masterson's own interrogatory responses, rather than any admissible evidence.

report for 2005, as not having been produced, without explaining its significance. (*Id.* at 6:7–9.) Plaintiff says Defendants explained the late production of 49 other documents, specifically copyright registrations for Lotus' products, pre-2004 catalogs, and pre-2004 photographs, were newly-discovered. (*Id.* at 6:24–7:10.) No other documents are identified.

Without diminishing Defendants' responsibility to produce requested documents, it is unclear why most of the documents identified would assist in resisting a motion for summary judgment or in supporting a motion to file an amended complaint. Plaintiff had, or had access to some of these documents, including the 2004 catalog and, it appears, the deposition transcripts. Others were not cited in the MSJ, and so were not relied on;[5] these include the pre-2004 catalogs, other photographs, the catalog supplement, sell sheets, and copyright registrations. These might have been helpful to Defendants, but would not have been helpful to Plaintiff who, as noted above, prevailed on the MSJ as to the 2004 catalog. Plaintiff has not shown why permitting "additional discovery would have revealed specific facts precluding summary judgment." *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1101 (9th Cir. 2006).

Any Rule 37 violation therefore did not prejudice Plaintiff, at least with regard to these motions. Plaintiff has not suggested additional discovery will be needed for some other purpose, so the Court does not consider that issue at this time. Plaintiff is granted leave, if he wishes, to bring a Rule 37 motion for sanctions with the Magistrate Judge, whose order is alleged to have been violated. Issues such as the imposition of monetary sanctions or the reopening of discovery as a remedy for discovery violations are referred to the Magistrate Judge.

### III. Conclusion and Order

For these reasons, Plaintiff's Motion to Amend is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's request to abandon its breach of contract claim is **GRANTED**, but its request for leave to add other allegations is **DENIED**. Because abandoning the breach of contract claim will not

/ / /

---

[5] When, as here, evidentiary support is required, the parties know they cannot rely on mere assertions in their pleadings. *S.A. Empresa v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982) ("A party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda.") Parties <u>must</u> cite the record specifically, and may not merely assert the evidence exists. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *United States v. Scott*, 290 F.Supp.2d 1201, 1208 (S.D.Cal. 2003) .

require the filing of an amended complaint, Plaintiff's request for leave to file a third amended complaint is **DENIED**.

Defendants' MSJ is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **GRANTED** as to claims arising from the 2005 and 2006 catalogs, and as to claims against Home. In all other respects, it is **DENIED**.

The Discovery Motion is **GRANTED IN PART** and **DENIED IN PART**. Leave to file a motion requesting stay of the MSJ pending further discovery is **DENIED.** Leave to file a Rule 37 motion asking the Magistrate Judge to impose sanctions for violation of her order is **GRANTED**.

**IT IS SO ORDERED**.

DATED: March 7, 2008

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge